Next case is going to be 22-1322 Sanchez v. Guzman. Counsel for appellant, if you're ready, please proceed. Yes, Your Honor. May it please the Court, I am Counsel Robert Barnes. I represent the appellants Marta Sanchez, the estate of Stephanie Lopez, and Dominique Martinez. There is no car chase exception to the Constitution, and this was the fundamental error made by the Court below. Let me – I want to interrupt early because I've got a problem with the briefing in this case that is so persuasive that I wonder if I even can get to the merits of the argument. There's no statement of facts in your brief, and there's no citations to the record in your brief other than to the district court opinion. You know, typically we don't go and search through the record ourselves to fix those deficiencies. And frankly, I mean, two of your issues are legal issues, but one of them is very fact-specific on clearly established law. Why should we even reach that issue where it wasn't briefed correctly? Respectfully, I think the issue is relatively straightforward. So, for example, we did quote from the appendix and from the district court's order on the – it's a relatively neat issue. So I'll quote from appendix 210, which is in our brief, which was the original Chief Judge Brimmer's decision at the pleading stage. And these set of facts didn't change between the pleading stage and the summary judgment stage for purposes of what were presumed to be true. Defendants fired dozens of gunshots into an occupied vehicle. So your position is we should just excuse your failure to follow our briefing rules? I didn't believe that we did violate the briefing rules. I believe it is a relatively straightforward question of law. But I do apologize if there were any mistakes made. Well, there's no statement of facts in your brief. I believe the statement of the case goes – because it's a summary judgment issue, Your Honor, that it's a relatively – and we did cite repeatedly to this particular provision and that the facts were not on this aspect in controversy. Defendants fired dozens of gunshots into an occupied vehicle where the vehicle was motionless and was not moving toward the officers or any other person where officers saw no weapon possessed by the vehicle occupants, resulting in physical injuries, paralysis, and death. So have our cases required the officers to actually see a weapon before they fire on an individual? Yes, Your Honor. In terms of deadly force, there has to be – it has to be a weapon. So sometimes the car can be a weapon. So what case do you have that says that they have to actually see the weapon? Because I'm thinking of cases where it appeared that someone had a – like they reached for a firearm in their pocket or something like that, but the weapon was not visible at the time of the firing. So, for example, that could – it's basically your deadly force analysis. So here, the classic deadly force analysis is does the officer have a reasonable belief that there's an imminent threat of serious harm? Right, but tell me a case that we have where we've required the firearm to be visible. Oh, there was no contention here that they were armed. There was no contention that they saw an arm. No, I'm not asking you the facts of this case. I'm asking you to tell me about a case in this circuit where we've held that the officers have to wait and see a visible weapon before they fire. Well, put it this way. There's no right for them to just start firing and think maybe he's armed. Okay, is that – you don't have a case – I mean, a specific case where that's happened? The – I know of no instance where this court has – or any court has ever held that police officers can firearms – can shoot on someone they don't believe to be armed. No, that's a different question. Well, that's the facts here. I'm not asking you about the facts here. I'm asking – I'm trying to establish what our case law is in the circuit, and if you have a case, and the case I'm looking for is one that says that officers have to see the weapon, that it has to be visible before they can fire on somebody. And I'm not asking you about the facts of this case. I'm asking you if you've seen a case that says that. The – I would suggest it by inference. That is, they have to see something that gives them a reasonable basis to believe there's an imminent risk, an imminent threat. So the – and so I would interpret that to mean they have to see a weapon. Well, what if I came up on Judge McHugh, and I'm a police officer, and I say, put your hands in the air, and she reaches down toward her pocket? Do I have to wait for her to pull out a gun before I open fire on her? I believe – I haven't looked at that particular issue in a while, but my recollection is that that actually usually is the case. It depends – you have to have a reasonable belief. So if the officer has additional facts, so for example – What if I heard – what if I had received a radio report that someone matching her description had five minutes before fired a gun over somebody's head? That could be a potentially additionally relevant fact. In all of the – so it's all of the – it's the same factual analysis regardless of whether the setting is a car setting, a house setting, a street setting. It's when am I allowed to use deadly force as a police officer? When is it reasonable for me to use it? And the – that's what the lower court here got confused on. For example, the original decision by the chief judge in denying the motion to dismiss emphasized that, quote, defendants violated clearly established law by using deadly force without being in imminent danger against the plaintiffs. Let me clarify something, Mr. Barnes. That was in the context of a motion to dismiss, right? Yes, Your Honor. So the district court was relying upon the affirmance of the complaint in making that determination, right? That's correct, Your Honor. Well, we're at summary judgment, and you have to have facts to support what's in the complaint. So, I mean, it does you no good to refer to facts in the complaint if those facts are not supported by the evidence in question. And that's what I think in part Judge McHugh was getting at. Where are the facts that would support this claim? And, I mean, I spent a lot of time with this case, and it comes down to what are the relevant universe of facts that govern the legal determination. And you didn't give us any help in telling us what you proceed to through record citations to be that relevant universe of facts. Respectfully, Your Honor, I believe appendix page 226, we reference what the district court said about the facts. The district court said, based on review of the video evidence and other evidence, that the district court was skeptical that there was no factual dispute. Well, skeptical doesn't tell us what the facts are that you see them to be. And let me be clear now. In the context of a qualified immunity summary judgment, we're supposed to be coming up with a universe of facts that we can apply the law to. What are those facts? Saying they're disputes doesn't tell us what you perceive those facts to be that we can apply the law to. So that wasn't done, right? Yes, it was done, Your Honor. How was that done? It was done at the district court level, and it was done here. I'm talking about by you on appeal. Where was that done? By reference to the district court's own conclusions on that issue. And the district court's conclusions were that there were disputes. That doesn't say what the resolution of the dispute, right? Yes, Your Honor. So I could have done a better job, I agree. Absolutely. No dispute in terms of what the court said. But what we cited were the same facts. Well, no. I mean, the point that we're both trying to make is that the district court's job is different when it's making its decision of whether summary judgment should be granted, then your job is here. And your job is to say, here is what a reasonable jury could have found, taking all of the evidence produced in the record that we cite to in our briefs, so you can look at it too, in the view most favorable to the plaintiff here. That isn't what the district court. The district court said, you know, it's this, it's this, it's undetermined. You're supposed to tell us this is the best that you can get out of these facts, and under the precedent here, we win. Yes, Your Honor. You didn't do it here. Well, I thought we did. But then that would be my mistake. Let me be clear. The facts are the same as what they were at the pleading stage in terms of what was proven. And that is that. That doesn't work. We can't look at the complaint. The complaint is an allegation. Your burden changes as you progress through the litigation. In your complaint, you just have to have a good faith basis for asserting it. But now at the summary judgment stage, you've got to actually come forward with evidence from which. And we did. We came through with video evidence, photographic evidence, testimonial evidence. And so you want us to go and just review the whole record and pick out the evidence we think is helpful to you? To be honest with you, I didn't think that issue was in dispute in the case. In other words, I didn't. The district court said there are disputes of facts. You alluded to that. There are a lot of disputes in this case. I take it you don't agree with the district court's conclusion that the car was moving before they shot at the car. You don't agree with that, do you? At the end, I don't believe it's agreed. Well, there's disputes. Reasonably inferred in favor of the plaintiff. The car was immobilized by the time the last 40-plus shots were fired. So the car was immobilized then. That's what the video evidence that the judge is referencing. I'm talking about the first two instances in which the car stopped. The district court's view was that the car was moving before they started shooting. And that was also the view of the mastery judge. Do you agree with that? We don't disagree with the first two. We disagree with, well, I don't think we disagree. You agree the car was moving before the shots took place? Yes. Before the car, the first set of shots took place. But not the last set of shots. You've already said that you concede that the car itself is a dangerous weapon. Only if it is directed at the officers. I'll give you an example of this. In the Supreme Court case in Millennics, dealt with the Fifth Circuit case, Lytle v. Bexar. And in that case, an officer shot at a fleeing vehicle because the person was a fleeing fugitive. The Fifth Circuit denied summary judgment because there is no qualified immunity. There is no right to use deadly force because someone's fleeing. Yeah, that's when we're past the officer and the officer's shooting at the car after it's passed, right? That's correct. Okay, that's not the facts that we have here. But I want to switch you to a different issue instead of the facts, which is you are saying that the district court erred in concluding that once the defendants pleaded the defense of qualified immunity, that your client has the burden of demonstrating that defendants violated clearly constitutional rights. I mean, isn't that just black-letter law from the Supreme Court and this court, that the burden is yours? Absolutely not. And in fact, what the court said in Gomez, for example, in Gomez, a court made a similar mistake of saying that the burden is on the plaintiff in the pleading stage. In the pleading stage, once again, you are not at the pleading stage. When you pleaded in your complaint, you didn't have to anticipate that the government might make a qualified immune or the defendant might make a qualified immunity defense, and therefore you didn't, in your complaint anticipating that, have to argue the two prongs that get around qualified immunity. You're not at the pleading stage, so you're not Gomez. You're now beyond that. The defense has been asserted, and both the Supreme Court and this court have said you bear the burden. The Supreme Court has not said that. And in fact, what the court said in Gomez is it said it wouldn't make sense for qualified immunity to be the burden of a plaintiff because at 446 U.S. at 640, qualified immunity facts are peculiarly known to the defendant. One of the cases that I believe you probably cited, if not, it's a pretty significant case, is Cox v. Glantz. Are you familiar with that case? Yes, Your Honor. Okay. That case has a whole section which talks about the fact that once there is the assertion of qualified immunity, the burden shifts to the plaintiff to prove those two things. And you have to show that there was a constitutional violation under the facts, and you have to show that it was clearly established. The burden becomes yours. It is, as Judge McHugh said, black-letter law. I just don't see – give me a case that says that's not true. Well, there's differences between the circuit on that. Well, we're in the Tenth Circuit. I agree. So to the degree that's the court's interpretation, I'll just say that we'll preserve that issue for later ruling. That doesn't make sense to me. Well, whether it makes sense or not, we've said it. And what I want to be clear on is maybe I misunderstood you. It was my understanding in the summary judgment context that your position was in the first two sequences that the only reason shots were fired, that when shots were fired, the car was immobile. It was stopped. Is that your view? Yes, Your Honor. It is our contention that there are sufficient facts to show the car was stopped at the time the shots were fired. I understand they have other – they claim a different version of the event. But at this point, all facts are inferred in favor of the plaintiff. Here, what's now law in Colorado and across the Tenth Circuit is that you can shoot at someone as long as there's a car chase and you don't have to meet deadly force standards. That's the law if this case is affirmed. That's the law if this case is upheld. That puts constitutional rights in danger. That puts everybody in this state and in the Tenth Circuit in danger. That's the real issue. Whether I did everything correct is secondary to that much more important constitutional question. Your time is up. We may give you a little limited rebuttal time after opposing counsel speaks. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Jonathan Eddy. I'm the attorney representing the Littleton defendants, Officers Guzman, McGrath, and Carnes. With me is Attorney D.J. Goldfarb. He'll be addressing any issues the Court, any issues or questions the Court may have with respect to Defendant Martinez. Mr. Eddy, just to clarify, what is the, are we dealing with the Fourth Amendment here post-Torres? I mean, this whole talk about the Fourteenth Amendment is really off the table, isn't it? We're just, this is a Fourth Amendment case or am I wrong? Well, it's a bit complicated, Your Honor. It is very complicated, but help me. Given the procedural context of this case, the way we view it, there were no Fourth Amendment claims that proceeded to summary judgment as to stops one and stops two. The Court dismissed those Fourth Amendment claims prior to Torres based on the fact that those suspects continued to flee at that time and, therefore, no seizure would have occurred. Yes, post-Torres, there was summary judgment briefing on the Fourth Amendment, right? Yes, yes, Your Honor. Okay, and I get your point. Let me just concede, take that point. But assuming whatever law is at play here now, is there any Fourteenth Amendment argument to be made now? What is the Fourteenth Amendment argument about? I mean, insofar as there's any law here, isn't it the Fourth Amendment? We briefed under both, Your Honor. Yeah. Just to cover all of our bases because we, frankly, were unsure what the Court would do with this, with post-Torres, whether it would address it under the Fourteenth or the Fourth. The issue that we had was that Judge Brimmer dismissed the Fourth Amendment claims as to stops one and two, and plaintiffs did not move for reconsideration under Rule 60 within the operative time frame. So the way we see it, those claims were waived even post-Torres. Well, let me ask you, let me go at it this way. Assuming that they had, in fact, amended their complaint or in some way satisfactory to you, preserved their Fourth Amendment claim. So there's a Fourth Amendment claim and some putative Fourteenth Amendment claim. What is the Fourth Amendment claim, then the operative law, assuming they had preserved it? I guess you'll put it that way. So it would depend on the stop and as to which suspect we're dealing with. So with respect to suspect Dominic Martinez, for instance, he was never struck with a bullet. I mean, that's, he's admitted that he was never shot. And does Torres, well, he says he doesn't know whether he was shot. He didn't say he didn't, wasn't shot. He said he didn't know whether he was shot, right? No, he tells the investigator that, well, in his deposition testimony, he says that he was shot. He thinks he was shot or that he doesn't know whether he was shot. He doesn't know whether he was shot. In an interview conducted with the investigators early on that was video recorded, which we've submitted to the court, the investigator specifically asked them, sir, this is weeks after the event occurred. Sir, were you shot? Were you hit? He says no. Well, I saw that. But the point is that under oath, he said something different. And so the question is, construing the facts in light and most favorable to the plaintiff, arguably he'd say at best he says he doesn't know he was shot. But that embedded in that is the question about Torres, which I was going to ask you. I mean, is it obvious after Torres that there actually has to be physical contact with the body? I mean, they shot at the vehicle, which he was in. Why isn't that enough? Well, I think the way the court addressed it in Torres, it went to the bullet striking the individual, not necessarily the vehicle. Basically because in this situation, it wouldn't have been like in Torres. It wouldn't have been the vehicle itself that was seized. It would have been the individual in question that was seized. And there's no allegation here that the initial round of shots, you know, disabled the vehicle in some way to potentially constitute some form of seizure. We have no issue addressing this under the Fourth Amendment as to all. Because we feel that even under the objective reasonableness standard, which the Fourth Amendment requires, our officers were well within their constitutional authority to do what they did. And I'm not advocating one way or the other. I'm just trying to understand. So your position would be even if, even if they had preserved a Fourth Amendment argument, which I understand you have questions about that, even if they had preserved a Fourth Amendment argument, as to Plaintiff Martinez, you'd still have to consider the 14th Amendment because he wasn't seized. Correct. That would be our position here. Okay. To touch quickly on comments made by Judge McHugh, obviously plaintiffs have waived any potential factual disputes that they would have otherwise raised on summary judgment. I mean, the case law on this is clear. Burke v. Relganado, it's a Tenth Circuit case that basically states that cursory statements without supporting analysis in case law are inadequate to preserve an issue on appeal. Plaintiffs clearly waive this. In defendant's answer brief, we specifically laid out the facts with record citations. Plaintiffs, in their reply, did nothing to refute those facts, Your Honor. The way we view this, those factual determinations have been waived. Now, getting to the meat of the issue with respect to the qualified immunity analysis, plaintiffs spend a great deal of time talking about this fair notice standard and what it means and how officers would have had fair notice in this situation. But what constitutes fair notice has been specifically defined by this circuit and the United States Supreme Court. It requires a case with substantial factual correspondence to the circumstances facing officers here where an underlying constitutional violation was found to have occurred, which was beyond debate. They failed to do that. Well, it doesn't have to be a car chase case, does it? Well, I mean, the district court seemed to imply it didn't have to be a car chase case in order for it to be in the ballpark, for it to matter. Well, I think if you look at the Supreme Court's holding in Mullinex, Mullinex essentially makes clear that at the very least, plaintiffs would need to provide a case involving a car chase where an underlying constitutional violation was occurred. If you look at all the cases discussed in Mullinex, they were all car chase cases. The Supreme Court went and addressed each of their car chase cases, Scott v. Harris, Purcell, et cetera. Well, you have to read the law as a harmonized whole, and we had plenty of cases talking about fair notice. And the point would be, I thought I heard you say, agree with me, that the litmus test is not car chase case or not, right? Well, I think after Mullinex, I think at the very least, they would have had to have provided this court with a car chase case either from the Supreme Court or the Tenth Circuit with additional substantial factual correspondence where an underlying constitutional violation was found. In order to equal fair notice. Exactly, in order to overcome qualifiability. Okay, well, this is one matter that I want you to help me with. I had trouble reading the district court and the magistrate judge's opinion as taking the facts in the light most favorable to the plaintiff. I mean, I looked at those videos, and it's not clear to me at all that the vehicles were not stopped, that they were moving before the shots were fired. I mean, what is your basis beyond the videos for believing that the facts as articulated by the district court and magistrate judge, in fact, are true? I mean, and let me be clear, not true. That they are taking the record in the light most favorable to the plaintiff. Certainly, Your Honor. So with respect to the summary judgment standard generally, a simple dispute is not enough. The dispute must also be genuine, and that's where plaintiffs fail. With respect to stop number one, the video shows, clearly shows, Officer Guzman first pointing his weapon towards the vehicle less than two seconds prior to that vehicle moving forward. Well, two seconds before the vehicle moved forward. Well, the question is whether the vehicle was actually being used as a weapon before he shot at the vehicle. Their position at summary judgment in their opposition was that at both points, at least the first two stops, there was no movement before the shots were fired. So then, then, under our case law, it becomes imperative that that video blatantly contradict that assertion of facts. The district court had language in there, and so did the magistrate. Well, the video doesn't support that view. Well, that's not the standard. The standard is the video has to blatantly contradict what they say happened. Does it? If you look at the entire context in the record as to what plaintiffs say transpired, you have less than two seconds. There's less than two seconds. I asked a pretty clear question. Does the video blatantly contradict their assertion that the car was stopped when the shots were fired in the first two instances? The video itself, no. The video on its own does not blatantly contradict that. Okay. And then why does that ambiguity not get construed in the light most favorable to the plaintiff to say the car was stopped before the shots were fired? Well, in this situation, you must look at the totality of the circumstances, so not just the fact that the video shows that the car was stopped. Here we have less than two seconds between the time Officer Guzman points a weapon and the car begins to move. Now, a reasonable jury could not conclude that during that period of time, and this is all within the record, that officers would have had time to give commands, Ms. Sanchez would have then had time to move her hands, which she admits were raised, to the steering wheel. She would have then had time to shift the vehicle from park into drive and then step on the accelerator and proceed towards Officer Guzman, all within a period of less than two seconds. You're saying that couldn't have happened within two seconds? Within less than two seconds. Well, the point I'm getting at is that, in their view, it didn't happen, right? Because their view is the car was stopped and they shot at him. And in terms of this question of whether they gave orders or not, the video doesn't have audio. How do we know that there were orders given? No, Your Honor, I'm saying in addition to the video, the other record evidence. Record evidence being statements of the defendants as to what happened? Statements of the defendants, in addition to deposition testimony from Mr. Dominic Martinez, as well as Marta Sanchez. Okay, well, if there is a conflict in the statements, between the statements of the defendant and the statement of the plaintiffs, who prevails at summary judgment in that situation? Well, under de novo review, Your Honor, the court would have to assume that we'll take the facts most favorable to the plaintiff. Yeah, it would. It'd have to resolve them in the light most favorable to the plaintiff. To that point, the district court talks about factual disputes. And, well, we don't have to decide those factual disputes because we're doing clearly established law. Well, if they're factual disputes, what do you do with those? And summary judgment on qualified immunity. Who gets the benefit of those factual disputes? The plaintiff gets the benefit. That's right. But I'm not saying that the plaintiff's version of events as to those issues conflict with what the officer said. Dominic Martinez testified that commands were, in fact, given during the first stop. So, again, that goes to, well, is it reasonable to believe that within a period of less than two seconds, officers would have had sufficient time to give commands prior to opening fire? Okay. I'm just saying in combination with all the evidence, not just the videos, no reasonable jury could conclude that that vehicle was, in fact, stationary at the time officers opened fire. Well, all right. Well, when I go back and pour through this again, which I've spent a lot of time doing so far, let me understand this from you. Are you accepting, then, that we're looking at the video in the light most favorable to the plaintiff? We're looking at statements from the plaintiffs about what happened here, and we're determining what the universe of facts are that govern this matter. If there are conflicts between what the defendant said and what the plaintiff said, the plaintiff gets the benefit of that, right? The plaintiff would get the benefit of the doubt, Your Honor, assuming that there would, in fact, be a genuine dispute as a result of that testimony and what the video shows. What our argument is and what I'm arguing is that there could be no genuine dispute as to what, in fact, took place. Namely, that the vehicle was, in fact, stopped at the time Officer Guzman opened fire. But additionally, There couldn't be, but your position would be it was moving when Officer Guzman. Correct. Okay. That's our position, yes. But you also, if I understood you correctly, accept the fact that the video itself, which the district court relied on and the magistrate judge relied on, does not blatantly contradict plaintiff's assertion that the car was stopped. In terms of stop one, yes, Your Honor. The video itself, just on the video itself, that does not blatantly contradict that the vehicle was. Let's try stop two. Okay. What do you say? Is it your position that the video blatantly contradicts their view that the car was stopped on stop two? In combination with the additional evidence. I spoke about the video. That's what I'm talking about. Well, in terms of timing, yes, Your Honor, we went into this at summary and judgment. There was a period of approximately four seconds between when Officer Guzman, you can see muzzle flashes from Officer Guzman's gun, and then the car backing out onto the street. Okay. In order for a juror to conclude that that would have, that Officer Guzman would have been firing on a stationary vehicle, the juror would have had to conclude that it would have taken more time than that for the car to dislodge itself to then turn 90 degrees relative to the building where it had previously been pinned and only then began to move forward. Our position is that there wouldn't have been enough time, Your Honor, for that to all occur if we assumed that the vehicle itself was stationary at the time Officer Guzman opened fire. It's not just whether the car was moving. It's also whether the car was moving in such a way that the officer felt like they were, he was in mortal danger, right? Correct. Well, in addition to, an additional consideration would be that if the officers felt that the vehicle could escape and then in and of itself pose a threat to public safety. And that would certainly have been the case by Stop 2 and definitely by Stop 3 based on the totality of the circumstances that the officers had observed previously. Let me ask you this. Particularly in the magistrate judge's order, I know you're over, and as I said, I'm going to give opposing counsel a little bit of rebuttal, so I'm going to go here. Particularly in the magistrate judge's and to some extent in the district court's order, there was reference to what the officers, their concerns about their safety. They felt in fear of their life. I felt, I forgot the colorful phrase one of the officers used in talking about his fear for his life. Is that relevant? Why do I care? I mean, the point is what a reasonable officer would have felt in those circumstances, right? Correct, Your Honor, it's an objective standard. But the officers are saying they felt it has to be looked at within the totality of what was happening. And here's an extremely complex and deadly car chase where suspects were stopped forcibly three separate times in addition to a ramming maneuver prior to Stop 3. And at each of those separate stops, they continued to flee. They put forth no manifest intent that they were surrendering, would surrender, or would stop flight in any way. And so based on the totality of those circumstances, the fact that here we were dealing with essentially fleeing felons that were believed to have been armed and who were, more importantly, and this is uncontroverted from the video, using a vehicle as a deadly weapon towards officers. It would have certainly not been unreasonable for the officers. How is the use of the vehicle as a deadly weapon uncontroverted? Where do you get that from? Video of Stop 1. I looked at the video of Stop 1. I'm sorry. All right, go ahead. The vehicle from the video itself appears to make an intentional turn towards Officer Guzman. The vehicle alters its direction. And why isn't that consistent with their view that the car was stopped, they raised their hands to surrender, and when they started to be target practice for the cops, they had to get out of there? Why isn't it entirely consistent with that view? That could be consistent, Your Honor, just looking at the video alone. But I'm saying if you look at the totality of the additional evidence in this case, it demonstrates that there could be no genuine dispute as to whether that vehicle was stationary. Additionally, it's also undisputed that the vehicle's engine was revving. Just on that alone, and even assuming for purposes of argument that Officer Guzman did fire on a stationary vehicle, it would have been entirely reasonable for him to assume or to perceive Ms. Sanchez's manifest intentions by revving that vehicle that she was intent on either maiming him or escaping at all costs. Thank you, counsel, for indulging me. Are there no further questions from the panel? No, Your Honor. We'll give you three minutes. Thank you, Your Honor. Just briefly on the fair notice question, Your Honor. I know it's been an issue that has commonly caused difficulty with courts over time. Originally, for example, leading up to the Supreme Court's Lanier decision, there were a lot of courts that thought in order for there to be fair notice, there needed to be a case on point that I think the words were fundamentally similar. The Supreme Court said, no, that's not what we mean. We mean by fair notice is the right established. Do you understand in this context of deadly force, when you can use it when you can't, not whether or not it happened inside a car, whether it happened in a parking lot, whether it happened inside a building. That may change whether or not it was reasonable for you to use deadly force, but it doesn't change the analysis of deadly force. So the court, when that continued, the Eleventh Circuit later came in and said, well, it's got to be materially similar precedent. Right now, I don't really care what the Eleventh Circuit said. I'm concerned with what we said. And to that point, let me be clear about this. As best I could tell, you only cite one due process case, one substantive due process case. Is there any Fourteenth Amendment claim in this action as far as you brought on appeal? All I see is Fourth Amendment. I see Fourteenth Amendment as well, Your Honor. I do believe what took place here shocks the conscience. Well, if you've only cited one case and you're supposed to show us clearly established law, then you've waived that. Why haven't you waived that? I don't believe we have, Your Honor, because the issue to me is not whether or not – it's whether, if you look at the facts, is the right established. You have to give us case law to support that right. We do, but it doesn't have to be, in the words of this Court of the Tenth Circuit, a scavenger hunt. It's, for example – You haven't put down any acorns to begin with. I mean, we don't have to do a scavenger hunt. You haven't given us anything that's lying on the ground as it relates to the Fourteenth Amendment, have you? I believe we have, Your Honor, because – What? I believe it shocks the conscience what took place. Give me a case that you – what cases have you cited in your brief? I know of no analogous case in the sense of something like this happening, but that's what makes it so scary, what took place here. As the – I mean, what this Court said in Casey, what this Court said in Paul, most recently, 47 F. 4th, 1139, it said fair notice doesn't require a scavenger hunt. I'll give two examples that we do cite to illustrate the point. In Mayfield and in – what was the other one? The – Morris. In Morris, the particular use of violence was a different kind of violence, and the argument was that that wasn't – there wasn't a case on point. My favorite one is Mayfield just because the police officer said, well, yeah, you had established a right for protection of due process, but you didn't say it applied to dogs. So the fact that I killed somebody's dog should – I wasn't on fair notice. And this Court, this Tenth Circuit, correctly ruled, no, you were on fair notice because that is within the context of the kind of fair notice we're talking about. It doesn't have to be a precisely on point case. It just has to be the principle and the right is established. And the right against deadly force under these circumstances was clearly established before the incident occurred. Thank you, Counsel. Last addendum. Any mistake I made should be on me. It shouldn't be visited upon Marta Sanchez, the estate of Stephanie Lopez,  Case is submitted. Thank you, Counsel. Thank you.